# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# FRANKFORT DIVISION

| | |
|---|---|
| CTIA – THE WIRELESS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>KENTUCKY 911 SERVICES BOARD, *et al.*,<br><br>Defendants. | Case No. 3:20-cv-43-GFVT-EBA |

## INTERVENOR UNITED STATES OF AMERICA'S MEMORANDUM IN DEFENSE OF THE CONSTITUTIONALITY OF 47 U.S.C. §§ 254(f), 254(i), AND 1510(c)(1)

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Pardis Gheibi*
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

October 16, 2023                            *Counsel for the United States*

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................................... 1

**LEGAL BACKGROUND** ........................................................................................................ 2

**PROCEDURAL BACKGROUND** ........................................................................................... 3

**ARGUMENT** ............................................................................................................................. 6

    **I.**     **The Court Should First Resolve All of Defendants' Non-Tenth Amendment Arguments.** ............................................................................................................. 6

    **II.**     **The Court Should Reject Defendants' Tenth Amendment Challenges.** ................... 6

        *A.*   *The Court Should Dismiss the Challenges to Sections 254(f) and 254(i) of the Communications Act on Standing Grounds.* ............................................................... 6

        *B.*   *None of the Relevant Provisions Commandeers the States in Violation of the Tenth Amendment.* ..................................................................................................................... 7

**CONCLUSION** ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                     Page(s)

*California v. Texas*,
  141 S. Ct. 2104 (2021) ...................................................................................................... 7

*Coventry Health Care of Mo., Inc. v. Nevils*,
  137 S.Ct. 1190 (2017) ..................................................................................................... 10

*CTIA - The Wireless Ass'n v. Kentucky 911 Servs. Bd.*,
  530 F. Supp. 3d 680 (E.D. Ky. 2021) ............................................................................... 4

*CTIA - The Wireless Association v. Keats*,
  2021 WL 7209356 (6th Cir. Dec. 3, 2021) ....................................................................... 4

*Fed. Deposit Ins. Corp. v. Main Hurdman*,
  655 F. Supp. 259 (E.D. Cal. 1987) ................................................................................... 7

*FERC v. Mississippi*,
  456 U.S. 742 (1982) ........................................................................................................ 11

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ............................................................................................................ 6

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
  452 U.S. 264 (1981) ............................................................................................. 1, 8, 9, 10

*Oklahoma v. United States*,
  62 F.4th 221 (6th Cir. 2023) ............................................................................... 6, 7, 10, 11

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) .......................................................................................................... 7

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .................................................................................................. 10, 11

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018) ............................................................................................ 8, 9, 10

*New York v. United States*,
  505 U.S. 144 (1992) ................................................................................................. 8, 9, 11

*Printz v. United States*,
  521 U.S. 898 (1997) ............................................................................................... 1, 9, 11

*United States v. Salerno*,
   481 U.S. 739 (1987)..................................................................................................8

**Constitutional Provisions**

U.S. CONST. art. I, § 8, cl. 3 ..............................................................................................9

**Statutes**

Wireless Telecommunications Tax and Fee Collection Fairness Act of 2018,
   Pub. L. No. 115–141, 132 Stat. 1114 (2018) ..............................................................1

Communications Act of 1934,
   Pub. L. No. 104–104, 119 Stat. 56 (1934) ..................................................................1

47 U.S.C. § 254(c)(1)........................................................................................................2

47 U.S.C. § 254(f).................................................................................................1, 2, 9, 10

47 U.S.C. § 254(i).................................................................................................1, 2, 9, 10

47 U.S.C. § 1510(c)(1).........................................................................................1, 3, 9, 10

49 U.S.C. § 1305(a)(1)....................................................................................................11

Ky. Rev. Stat. § 65.7636(2)(b) (effective until Mar. 26, 2020) .........................................3

2020 Ky. Acts ch. 37, § 1..................................................................................................3

**Regulatory Authorities**

47 C.F.R. § 54.403 .............................................................................................................2

47 C.F.R. § 54.407 .............................................................................................................2

47 C.F.R. § 54.701 .............................................................................................................2

**Other Authorities**

FCC, *Lifeline Support for Affordable Commc'ns*, https://www.fcc.gov/lifeline-consumers (last visited Oct. 16, 2023)........................................................................................................2

# INTRODUCTION

The United States has intervened in this action to defend the constitutionality of Section 1510(c)(1) of the Wireless Telecommunications Tax and Fee Collection Fairness Act of 2018 ("Fairness Act"), Pub. L. No. 115–141, 132 Stat. 1114 (codified at 47 U.S.C. § 1510(c)(1)); and Sections 254(f) and 254(i) of the Communications Act of 1934 ("Communications Act"), Pub. L. No. 104–104, 119 Stat. 56 (codified at 47 U.S.C. §§ 254(f), 254(i)).

Kentucky 911 Services Board, Josiah Keats, in his official capacity as Chair of the Board, Mike Sunseri, in his official capacity as administrator of the Board, and the unknown board members, in their official capacity as members of the Board (collectively, "Defendants") argue that Section 1510(c)(1) of the Fairness Act and Sections 254(f) and 254(i) of the Communications Act (together, "Relevant Provisions") are unconstitutional because they commandeer the states in violation of the Tenth Amendment. As an initial matter, the Court should not address the constitutional issue if it can resolve the case on non-constitutional grounds. If the Court reaches the Tenth Amendment challenges, it should dismiss the challenges to Sections 254(f) and 254(i) of the Communications Act because Defendants lack standing to raise them. If the Court reaches the merits of the constitutional challenges, Defendants' Tenth Amendment challenges to all three Relevant Provisions clearly fail because none require states to administer a federal program; instead, they fit comfortably within Congress's power to "pre-empt or displace state regulation of private activities affecting interstate commerce," *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 290 (1981), and "ma[ke] compliance with federal standards a precondition to continued state regulation in an otherwise pre-empted field," *Printz v. United States*, 521 U.S. 898, 926 (1997).

## LEGAL BACKGROUND

In 1985, the Federal Communications Commission ("Commission"), relying on the authority granted to it by the Communications Act of 1934, established the Lifeline program, which provides qualifying low-income individuals limited phone services at a discount. *See* FCC, *Lifeline Support for Affordable Commc'ns*, https://www.fcc.gov/lifeline-consumers (last visited Oct. 16, 2023). Participating providers of these services are reimbursed per Lifeline user by the Universal Service Administrative Company, which administers the funds under the direction of the Commission. *See* 47 C.F.R. §§ 54.403, 54.407, 54.701.

In 1996, the Communications Act was amended with Section 254 to prescribe regulations for federal universal service, which it defined as "an evolving level of telecommunications services that the Commission shall establish periodically under this section, taking into account advances in telecommunications and information technologies and services." 47 U.S.C. § 254(c)(1). Among other things, Section 254 prescribes a role for states in this regulatory regime. Section 254(i) states that "[t]he Commission and the States should ensure that universal service is available at rates that are just, reasonable, and affordable"; and Section 254(f) provides:

> A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms.

As is relevant here, Kentucky funds its 911 wireless system in part by collecting a service charge per wireless number. Kentucky has historically collected service charges on Lifeline

services and allowed the participating providers to collect the service charges directly from the end users. *See* Ky. Rev. Stat. § 65.7636(2)(b) (effective until Mar. 26, 2020) (providers "may bill and collect from each end user the charges calculated ... with respect to each end user"). To alleviate the financial burden on low-income users of the Lifeline program as a result of these service charges, Congress enacted the Fairness Act, which provides in relevant part:

> A State, or a local jurisdiction of a State, may not require a person who is neither a resident of such State or local jurisdiction nor an entity having its principal place of business in such State or local jurisdiction to collect from, or remit on behalf of, any other person a State or local tax, fee, or surcharge imposed on a purchaser or user with respect to the purchase or use of any wireless telecommunications service within the State unless the collection or remittance is in connection with a financial transaction.

47 U.S.C. § 1510(c)(1).[1] In response to this legislation, in March 2020, the Kentucky General Assembly amended Ky. Rev. Stat. § 65.7636, making Lifeline providers directly liable for the service charge on each Lifeline wireless number and prohibiting the providers from passing the charge to end users. 2020 Ky. Acts ch. 37, § 1 ("HB 208").

## PROCEDURAL BACKGROUND

On June 2, 2020, CTIA – The Wireless Association ("CTIA" or "Plaintiff") sued Defendants arguing that HB 208 is preempted by Section 1510(c)(1) of the Fairness Act; is preempted by Sections 254(f) and 332(c)(3) of the Communications Act; and violates the Equal Protection, Due Process, and Takings Clauses. *See* ECF 1.

On June 26, 2020, Defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that CTIA lacked standing, that HB 208 was not

---

[1] Several of CTIA's members provide free Lifeline services for which there is no financial transaction between the user and the Lifeline provider. *See* ECF 1, ¶ 22.

preempted by federal law, and that CTIA failed to raise a viable constitutional challenge to HB 208. *See* ECF 7. Defendants did not argue in their motion to dismiss that any of the federal provisions alleged to preempt HB 208 violate the Tenth Amendment or any other constitutional provision.

This Court held that CTIA had standing, and that HB 208 was preempted by Section 1510(c)(1) of the Fairness Act but not by Sections 254(f) and 332(c)(3) of the Communications Act. *See CTIA - The Wireless Ass'n v. Kentucky 911 Servs. Bd.*, 530 F. Supp. 3d 680, 699–693 (E.D. Ky. 2021). Because the Court held that HB 208 was preempted by federal law, it did not address the merits of CTIA's Equal Protection, Due Process, and Takings Clause challenges to the Kentucky law. *Id.* at 694. Defendants appealed, arguing that CTIA lacks standing and that the Court's Section 1510 preemption ruling was erroneous. CTIA cross-appealed the Court's preemption rulings on Sections 254(f) and 332(c)(3). The Sixth Circuit affirmed this Court's preemption rulings on Sections 254(f) and 332(c)(3) and reversed the preemption ruling on Section 1510. *See CTIA - The Wireless Association v. Keats*, 2021 WL 7209356, at *4–5 (6th Cir. Dec. 3, 2021).

On remand, Plaintiff filed an Amended Complaint, arguing that HB 208 should be struck down under conflict preemption because it "place[s] a financial burden on the wireless Lifeline program" and therefore "conflicts with the federal objectives and purposes [of Sections 151 and 254 of the Communications Act and Section 1510 of the Fairness Act]." ECF 36, ¶ 3. CTIA also renewed its constitutional challenges to HB 208 under the Equal Protection, Due Process, and Takings Clauses. *Id.* ¶¶ 129–144.

On December 21, 2022, Defendants filed an Amended Answer to CTIA's Amended Complaint, in which they claimed that 47 U.S.C. § 1510 and 47 U.S.C. § 254, are "unconstitutional

-4-

and invalid … under the Constitution's anti-commandeering principle and thus cannot be enforced or have any preemptive effect." *See* ECF 48 at 4. Defendants also filed and served a notice of constitutional question pursuant to Rule 5.1(a) of the Federal Rules of Civil Procedure. *See* ECF 45. On February 21, 2023, the United States filed an Acknowledgement of the Constitutional Challenge, stating that intervention was not warranted at that time because no filing "details the basis of Defendants' constitutional challenge or seeks a Court ruling striking down any provision of the federal statutes." ECF 51 at 2. The United States further stated that "[s]hould the constitutionality of 47 U.S.C. § 1510 or 47 U.S.C. § 254 be challenged in a future motion … the United States respectfully requests that … it be given the opportunity to intervene within 60 days of that filing for purposes of defending the statutes' constitutionality." *Id*.

On July 26, 2023, Defendants moved for judgment on the pleadings or, alternatively, summary judgment, arguing, among other things, that Section 1510(c)(1) of the Fairness Act and Sections 254(f) and 254(i) of the Communications Act (together, "Relevant Provisions") violate the Tenth Amendment. Defs.' Mem. in Supp. of Mtn. for Summ. J. at 8–9 ("Defs.' Mem."). Defendants also filed a new Rule 5.1(a) notice of constitutional question. *See* ECF 60.

The Court extended the time period during which the United States may intervene until October 16, 2023. *See* 75. The United States has now intervened to defend the constitutionality of Section 1510(c)(1) of the Fairness Act and Sections 254(f) and 254(i) of the Communications Act. *See* ECF 80.

# ARGUMENT

## I. The Court Should First Resolve All of Defendants' Non-Tenth Amendment Arguments.

The Court should first resolve Defendants' non-Tenth Amendment arguments. Defendants have raised three non-constitutional arguments in their opening brief: (1) that CTIA lacks standing to bring this suit, *see* Defs.' Mem. at 5–8, (2) that the Sixth Circuit's decision forecloses CTIA's preemption claims, *see id.* at 24–25, and (3) that the Relevant Provisions do not preempt HB 208, *see id.* 9–23.[2] If Defendants prevail on any of those arguments, the Court need not reach the Tenth Amendment issue. Thus, as a matter of constitutional avoidance, the Court should address these arguments prior to reaching Defendants' argument that the Relevant Provisions violate the Tenth Amendment. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.").

## II. The Court Should Reject Defendants' Tenth Amendment Challenges.

### A. The Court Should Dismiss the Challenges to Sections 254(f) and 254(i) of the Communications Act on Standing Grounds.

If the Court reaches Defendants' Tenth Amendment challenges, it should dismiss the challenges to Sections 254(f) and 254(i) of the Communications Act because Defendants lack standing to raise them. While CTIA has invoked various provisions of the Communications Act—including Sections 254(b) and 245(c)—to support its preemption argument, *see* ECF 36, ¶¶ 29–30, it has not expressly alleged that Sections 254(f) and 254(i) preempt HB 208. Without the threat of preemption, Defendants must establish standing by identifying an injury or threat of future injury as a result of enforcement of Sections 254(f) and 254(i). *See Oklahoma v. United States*, 62

---

[2] The United States does not take a position on any of these issues, including preemption, because none call into question the constitutionality of a federal statute.

F.4th 221, 233–34 (6th Cir. 2023) (explaining that standing to raise a Tenth Amendment claim must be established by pointing to the threat of preemption or enforcement).[3] Defendants did not meet their burden of identifying either a "contemporary" or "substantial" "likelihood of future enforcement" of Sections 254(f) and 254(i). *California v. Texas*, 141 S. Ct. 2104, 2114 (2021) (internal quotation and citation omitted). Simply put, Defendants failed to meet their burden of showing that there is a "case" or "controversy" regarding either Section as required for Article III standing, which renders Defendants' challenges to Sections 254(f) and 254(i) purely academic. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of federal court] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement."). As such, the Court should dismiss Defendants' Tenth Amendment challenges to Sections 254(f) and 254(i) on standing grounds.

  B. *None of the Relevant Provisions Commandeers the States in Violation of the Tenth Amendment.*

If the Court reaches the substance of Defendants' Tenth Amendment challenges, it should reject them because none of the three Relevant Provisions amounts to commandeering.

As an initial matter, it is worth noting that Defendants raised these challenges for the first time at the summary-judgment stage despite the opportunity to do so earlier in the litigation. CTIA had invoked 47 U.S.C. § 1510 and 47 U.S.C. § 254 in making its preemption claims when it filed

---

[3] Although the Tenth Amendment challenge in *Oklahoma* was raised by plaintiffs, the court's reasoning is just as applicable here because Defendants' Tenth Amendment challenge is an affirmative defense. *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 269 (E.D. Cal. 1987) (explaining that where "defendant raises a true affirmative defense seeking to litigate questions not encompassed by plaintiff's case-in-chief … . defendant's posture is wholly analogous to that of a plaintiff in a typical standing dispute").

its Complaint in June 2020, *see* ECF 1, giving Defendants ample opportunity to raise the Tenth Amendment challenges when they filed their motion to dismiss over three years ago. But regardless, even now, the challenges are substantively deficient. As the Supreme Court has emphasized, "[a] facial challenge to a legislative Act is … the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). This is a "heavy burden." *Id.* Yet, Defendants attempt to launch facial challenges to three different sections across two separate acts through four short paragraphs. *See* Defs.' Mem. at 8–9.

The thin briefing aside, Defendants' Tenth Amendment challenges fail on the substance. The Supreme Court has described the anticommandeering doctrine as "simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.,* the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). The "pioneering case," *id*. at 1476, is *New York v. United States*, where the Supreme Court held that Congress may not commandeer the legislative processes of the States "by directly compelling them to enact and enforce a federal regulatory program." 505 U.S. 144, 161 (1992) (quoting *Hodel*, 452 U.S. at 288). The Court therefore invalidated a provision of the Low-Level Radioactive Waste Policy Amendments Act of 1985, that required each state either to regulate radioactive waste under federal guidelines or to take title to and dispose of the waste themselves. *New York*, 505 U.S. at 174–75. The Court concluded that the statute impermissibly pressed the states involuntarily into "the service of federal regulatory purposes." *Id.* at 175. Most recently, in *Murphy,* the Court held that the Professional and Amateur Sports Protection Act of 1992, which prohibited states from authorizing sports gambling, was

-8-

unconstitutional because it "unequivocally dictate[d] what a state legislature may and may not do." *Murphy*, 138 S. Ct. at 1478.

Defendants, with passing references to *Murphy* and *New York*, claim that the Relevant Provisions also "command[]" the states to do or refrain from doing something in violation of the anticommandeering doctrine. *See* Defs.' Mem. at 9. Defendants' argument begins and ends with the claim that the Relevant Provisions are worded as though they are directed at states. *Id.* ("Section 1510 bars a state or state agency from requiring wireless providers to collect or remit a wireless-service fee unless it 'is in connection with a financial transaction.'" (quoting 47 U.S.C. § 1510(c)(1))); *id.* (Section 254(f) "expressly permits states to adopt universal-service regulations but 'only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms'" (quoting 47 U.S.C. § 254(f))); *id.* (Section 254(i) "commands states to 'ensure that universal service is available at rates that are just, reasonable, and affordable'" (quoting 47 U.S.C. § 254(i))). This text, Defendants argue, means that the Relevant Provisions are "directed to state legislatures" in violation of the Tenth Amendment. *Id.*

Defendants' cursory argument misses the mark. Through the Relevant Provisions, Congress is not commandeering the states; rather, it is merely restricting state and local regulation in the area of telecommunications, which falls comfortably within Congress's powers under the Commerce Clause. *See* U.S. CONST. art. I, § 8, cl. 3. When exercising those powers, Congress may "pre-empt or displace state regulation of private activities affecting interstate commerce," *Hodel*, 452 U.S. at 290, and "ma[ke] compliance with federal standards a precondition to continued state regulation in an otherwise pre-empted field," *Printz*, 521 U.S. at 926.

Consistent with that principle, in enacting the Relevant Provisions, Congress has pre-conditioned the continued state regulation in this area in certain ways. *See* 47 U.S.C. § 1510(c)(1) (restricting the way in which state and local authorities impose surcharges on wireless telecommunications services); *id.* at § 254(f) (allowing states to regulate in this area so long as the regulations are "not inconsistent with the Commission's rules to preserve and advance universal service"); *id.* at § 254(i) (providing that the states cooperate with the Commission to achieve fair rates for universal service). Thus, rather than "commandeer[] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program," *Hodel*, 452 U.S. at 288, the Relevant Provisions are best read as Congress "offer[ing] States a regulatory role contingent on following federal standards." *Oklahoma*, 62 F.4th at 234.[4]

Instead of engaging with the substance of the Relevant Provisions, Defendants rely solely on the phrasing of the Relevant Provisions to support their Tenth Amendment challenges. This reliance is misplaced. As the Supreme Court has emphasized, there is no "require[ment] [that] Congress … employ a particular linguistic formulation when preempting state law." *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S.Ct. 1190, 1199 (2017). Indeed, "preemption often carries th[e] tone [of a command]." *Oklahoma*, 62 F.4th at 235. And "[b]ecause Congress often speaks in this manner, 'it is a mistake to be confused' by preemption provisions that 'appear to operate directly on the States.'" *Id.* (quoting *Murphy*, 138 S. Ct. at 1480); *see also Murphy*, 138 S. Ct. at 1480 ("[I]t is a mistake to be confused by the way in which a preemption provision is phrased."). Instead, courts should "look beyond the phrasing" to evaluate the substance of the laws. *Id.* For instance, in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), the Court upheld a

---

[4] Although the role of the Relevant Provisions is to preempt inconsistent state laws, the United States takes no position on whether any of the Relevant Provisions—either in isolation or in conjunction with other provisions—preempt HB 208.

provision of the Airline Deregulation Act of 1978, which stated that "no State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any [covered] air carrier." 49 U.S.C. § 1305(a)(1). Although the provision might read as a directive to the states, the Court looked beyond the text and found that the provision was a proper attempt by Congress "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378; *see also Oklahoma*, 62 F.4th at 235 (upholding "Section 3052(f)'s statement that a State 'shall not impose or collect' certain fees" because the provision "'simply establish[es] requirements for continued state activity in an otherwise pre-emptible field,'" even though the text "may sound like a command" (quoting *FERC v. Mississippi*, 456 U.S. 742, 769 (1982))).

Similarly, here, the Relevant Provisions do not "compel the States to enact or administer a federal regulatory program," *New York*, 505 U.S. at 188, but rather make "compliance with federal standards a precondition to continued state regulation in an otherwise pre-empted field," *Printz*, 521 U.S. at 926. As such, the Court should reject Defendants' Tenth Amendment challenges as meritless.

## CONCLUSION

For the foregoing reasons, the Court should reject Defendants' Tenth Amendment challenges to Section 1510(c)(1) of the Fairness Act and Sections 254(f) and 254(i) of the Communications Act.

Dated: October 16, 2023                                          Respectfully submitted,

                                                          BRIAN M. BOYNTON
                                                          Principal Deputy Assistant Attorney General

                                                          LESLEY FARBY

        Assistant Branch Director

        */s/ Pardis Gheibi*
        PARDIS GHEIBI (D.C. Bar No. 90004767)
        Trial Attorney, U.S. Department of Justice
        Civil Division, Federal Programs Branch
        1100 L Street, N.W.
        Washington, D.C. 20005
        Tel.: (202) 305-3246
        Email: pardis.gheibi@usdoj.gov

        *Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2023, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Pardis Gheibi*